EXHIBIT D

**EXHIBIT D**

## Large Loss Inspection Report

GAI Adjuster:      Rick Butera
Claim No.:         571564627
Inspection Date:   May 13, 2013

**Insured:**       Estefan Enterprises, Inc.

**Attendees:**
Insured:           Rick Dopico – Vice President of Estefan Enterprises, Inc
                   Aldo Garcia - Architect
PA:                None
IA:                David Alvarez – EGA w/ Engle Martin
Coverage Counsel:  Jason Chodos and Doug Houser
Subro Counsel:     Not Assigned
Consultants:       Osvaldo Arevalo, PE – SDII Global (Structural Engineer)
                   Gus Cois – DBI (Construction Consultant)
                   Jeff Williams – Matson Driscoll D'Amico (Accountant)

**Other:**         N/A

**Risk:**          Three-story, building built in 1932, just off the water on Miami Beach. Ground floor is a restaurant, second floor additional restaurant space and offices, third floor holds 7 residential apartments.

**Cause of Loss:** Insured alleges there is "sagging" of the second floor caused by rotted first-floor joists and sill plate. They believe that there is water that has leaked onto the floor supports over the years that has deteriorated the wood, causing it to fall apart and thus resulting in the interior bearing wall "sagging".

**Inspection Objectives:** To view and identify any "sagging", investigate the cause thereof, understand the issues involved in coverage and the adjustment, quantify the company's exposure, and understand what records might exist that can assist us.

**Results & Summary:** We met with the insured and reviewed the drawings from 1992 when the renovation of the lower level into the restaurant it is now took place. We walked throughout two floors and the hallway of the third floor and also viewed the crawlspace. We were unable to identify hard evidence of "sagging". Also, we viewed from on top of the first floor the poor wood framing members in the crawlspace. We observed a water pipe the architect believes might have released water onto the wood members and we also reviewed other areas of wetness. We viewed cracks in the walls of the second and third floors in areas over the doorways and along the hallway.

The insured had received a permit for temporary shoring of the second floor and was well underway with that work when we arrived. After walking the premises, we were unable to identify any "sagging". We hadn't been provided any forensic data or records and no physical level tests or studies were performed that would show evidence of "sagging" or that form the basis it seems of the architects opinion there is "sagging". It seems more based on the observation that the joists had failed and certain other cosmetic issues. Also, we wondered the purpose of the shoring if there was no identifiable "sagging", no order form any municipal office, etc…the issue arose as to whether that was more so part of the repair process – to shore the upper floor so the failed lower floor framing could be accessed - than any required "shoring" as a result of potential collapse. The issue of whether or not there is any collapse or even some state of that is being addressed



Δπ EXHIBIT 9
Deponent D. Moore
Date 10/19/17  Rptr. ST
WWW.DEPOBOOK.COM

CF000278

by SDII. Initial observations indicate there may be areas of the building that have prior cracking and there are reports that might exist from prior engineer or city inspections

Also, we are looking into the policy and its inception. There is some indication from the inspection that the insured was aware of this possibly up to two years prior, but more certainly around 6 months prior - in December. Our policy incepted in March 2013, though was a re-write of a policy whose inception date is 3/1/11. A draft Reservation of Rights has been prepared for counsel's review and completion.

**Potential Damages and Accuracy of Scope:**
Building:
The insured alleges the third and second floors will require cosmetic spackle and paint for the wall cracks. The lower level will require shoring, removal of the lower level floor in part, replacing of the bearing walls and the finishes. They advised us that the rebuild will be done by October.

Early information is as follows:

| | |
|---|---|
| Initial inspection | $ 1,500 (insured quote) |
| Shoring drawings | $ 4,000 (insured quote) |
| Shoring work | $ 27,000 (insured quote) |
| Architect | $ 20,000 (RXB estimate) |
| Rebuild | $500,000 (DBI rough estimate) |
| Total | $552,500 |

We will work to have a more precise ROM in the weeks ahead following SDII Global's and DBI's more detailed analysis. The above is based on worst-case and not withstanding coverage issues.

Business income and EE:
The insured indicates he grosses at the restaurant alone $7M. He has established a restaurant down the road that has taken him from around a capacity of 200 customers to 150 customers and he may not have a bar area though can serve drinks. The insured architect anticipated 6 months for the rebuild. It is too early to say whether that is reasonable. I roughed out some restaurant figures with Jim Williams with MDD, again not withstanding coverage:

Apartments
7 apartments @ $850 average rent = $5,950 p/mo x 6 months..............$ 35,700

Restaurant
$7M per year /12 months = $583k p/mo x 6 months = $2.6M gross
Less saved expenses, assumed 30% reduction in sales......................$683,000

Total......................................................................................................$719,000

For the purposes of this report, any Extra Expense would appear slight and should be considered in the figures above until such time as it can be identified more precisely and broken out.